IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Brian Keith Watts, ) | |
| ) | Cr. No. 3:06-452 |
| Movant, ) | |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| United States of America, ) | |
| ) | |
| Respondent. ) | |

Movant Brian Keith Watts is an inmate in custody of the Federal Bureau of Prisons. He currently is housed at FCI-Estill in Estill, South Carolina. On January 6, 2011, Movant, proceeding pro se, filed the within motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. On February 14, 2011, Respondent United States of America filed a motion for summary judgment. By order filed February 15, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Movant was advised of the summary judgment procedures and the possible consequences if he failed to respond adequately. Movant filed a response on March 21, 2011.

The Court of Appeals affirmed Movant's conviction and sentence on November 19, 2009. The Fourth Circuit issued its mandate on February 1, 2010. Movant thereafter had ninety days, until May 2, 2010, to file a petition for writ of certiorari. Therefore, Movant's one year limitation period commenced on May 3, 2010. See Clay v. United States, 437 U.S. 522, 532 (4th Cir. 2003). Movant had until May 3, 2011 to file his § 2255 motion. Movant's § 2255 motion is dated January 3, 2011 and was filed January 6, 2011.[1] Movant's motion is timely.

---

[1] Movant previously filed a § 2255 motion on July 6, 2010. He voluntarily dismissed it on August 23, 2010.

## I. FACTS

Movant was indicted on January 19, 2006 in a superseding indictment charging Movant and thirteen co-defendants with conspiring to knowingly, intentionally, and unlawfully manufacture, possess with intent to distribute, and to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A), all in violation of 21 U.S.C. § 846 (Count 1); knowingly, intentionally, and unlawfully manufacturing and possessing with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A) (Count 13); knowingly and intentionally possessing equipment, chemicals, products, and materials which may be used to manufacture a controlled substance, in violation of 21 U.S.C. § 843(a)(6) and 843(d)(2) (Count 14); knowingly using and carrying firearms during and in relation to, and in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count 15); and knowingly, willfully, and unlawfully renting, using, maintaining, managing, and controlling an outbuilding for the purpose of manufacturing, storing, and distributing 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 856(a)(1) and (2) (Count 16).

On May 24, 2007, Movant filed a plea agreement in which he agreed to plead guilty to Counts 1 and 15 of the superseding indictment. The plea agreement offered Movant the opportunity for a U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35 motion for downward departure. The plea agreement also provided for a possible three level decrease in Movant's offense level based on acceptance of responsibility. Movant appeared before the court with appointed counsel for a change of plea hearing the same day. During the plea colloquy, Movant questioned Count 15 and asserted that he

did not carry a gun, possess a gun, or own a gun. Change of Plea Hearing, ECF No. 764, 21. The Assistant United States Attorney (AUSA) informed the court that four guns were located during a search of Movant's property: a shotgun in Movant's residence, which was a single-wide mobile home; and three SKS assault rifles in a shed behind the mobile home. The AUSA stated that three co-defendants would bring the assault rifles to the shed when they would meet to manufacture methamphetamine. Id. The AUSA indicated that he had spoken with appointed counsel and was aware that Movant had some qualms about the gun charge. Id. According to the AUSA, appointed counsel stated that Movant used the shotgun for turkey hunting. The AUSA argued that, regardless, Movant also was charged with the SKS assault rifles belonging to the co-defendants under the theory "the hand of one is the hand of all." Id. at 22. The AUSA further asserted that Movant was liable for the possession of the SKS assault rifles under Pinkerton v. United States, 328 U.S. 640, 647 (1946) (holding that a defendant can be liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy).

Appointed counsel informed the court that he had talked to Movant at length about how the government could provide constructive possession and aiding and abetting elements of the crime, and that Movant had admitted that he was aware his co-defendants had the SKS assault rifles in connection with the methamphetamine operation. Id. at 23-24. The court queried Movant, who acknowledged that the methamphetamine was produced in the shed behind his mobile home, and that the co-defendants would take the assault rifles into the shed with them. Movant denied being in the shed whenever his co-defendants were manufacturing methamphetamine. Id. at 24-25. Movant informed the court that he wanted to plead guilty, but that he objected to appointed counsel tell[ing] a prosecutor what me and him talked about behind closed doors." Id. at 28. The court

3

declined to accept Movant's plea based upon Movant's concerns about Count 15. Id.

Movant filed a pro se motion to appoint new counsel on June 1, 2007. The court granted Movant's motion and appointed new trial counsel. Trial counsel filed a motion to suppress on October 2, 2007, asserting that a statement given to Michael Burke of the Lexington County Sheriff's Department was not a voluntary statement and not admissible at trial. The government filed a response in opposition on October 9, 2007. After a hearing on the matter, the court denied the motion to suppress on October 9, 2007. ECF No. 495.

The case proceeded to trial on October 22, 2007. Trial counsel made an oral motion to suppress any items seized on the basis that the search warrant did not sufficiently describe the property. Transcript of Jury Trial, Vol. I, ECF No. 688, 4. After hearing arguments from the parties, the court denied trial counsel's motion, finding that the description of the property was such that the officer with the search warrant could, with reasonable effort, ascertain and identify the place that was intended to be searched. Id. at 8.

After the jury was brought in, the government introduced evidence from its expert in the manufacture and distribution of methamphetamine, Michael A. Miller of the Anderson County Sheriff's Office. Mr. Miller testified as to the process of manufacturing methamphetamine and the various means of ingesting the substance. Miller further testified that methamphetamine cooks and abusers tend to be extremely aggressive and violent individuals, and that they use firearms as a way of protection. Miller testified that firearms are used in order to carry out the methamphetamine trade. Id. at 37. Miller stated that firearms are used in order to get ingredients from other cooks or to get drugs or money from other cooks. Id. According to Miller, well over 95 percent of the 572 methamphetamine labs that he had investigated during his career involved firearms. Id. Miller

testified that it is common for methamphetamine cooks and users to steal supplies from each other. Id.

The government introduced Michael A. Burke of the Lexington County Sheriff's Office as a witness. Burke testified that he was the case agent for the search of Movant's property on June 20, 2003. Id. at 43. Movant was located in a mobile home approximately 25 yards from the shed where the methamphetamine was manufactured. Id. at 46. George Shealy and co-defendants Tom Wymer and Joe Wise were located in the shed. Id. Rounds corresponding to SKS high-powered rifles were found in the mobile home. Id. at 56. Items used for manufacturing methamphetamine were located in the shed. Id. at 57-58. 67. Chris Stout of the Lexington County Sheriff's Office testified that he was involved in the search of the shed, and that he located an SKS rifle leading against a chair. Id. at 84. John Jones of the Lexington County Sheriff's Office testified that he was involved in the search of the mobile home. He found Movant sleeping in a recliner and put him in restraints. Id. at 86. He located three assault rifle rounds in the den area, and a set of digital scales, a plate and straw, and a blender with pill residue in the kitchen area. Id. at 87-88. Jones testified that he also found a cigarette pack containing straws and methamphetamine in Movant's pants pocket. Id. at 88.

Melissa T. Horne of the Richland County Sheriff's Office was offered as an expert in forensic chemistry. Id. at 95. Horne testified that she had tested a number of substances collected by law enforcement at the shed and mobile home and identified methamphetamine or methamphetamine residue. Id. at 106-11.

The government introduced co-defendant Thomas Wymer. Wymer testified that he knew Movant through co-defendant Joe Wise, because Movant would obtain methamphetamine from Wise from time to time. Id. at 118. Wymer testified that he, Wise, and Movant would purchase supplies

5

together for producing methamphetamine. Id. at 119. Wymer and Wise would cook the methamphetamine in Movant's trailer or the shed. Id. at 123-25. According to Wymer, on one occasion Movant and Wymer drove Movant's truck to pick up Shealy. Shealy was carrying an SKS rifle in the cab of the truck with Movant and Wymer. Id. at 126. Wymer testified that he, Wise, and Shealy each had an SKS rifle that they typically took to a cook in order to protect their drugs. Id. at 129. Wymer testified that the weapons were in plain sight and that there was no way Movant could not have known they were on Movant's property. Id. at 130.

The government introduced the testimony of George Arthur Shealy, who was in custody of the South Carolina Department of Corrections. Shealy testified that he would obtain materials for manufacturing in exchange for gram quantities of methamphetamine. Id. at 147-48. Shealy testified that he observed Wise provide Movant with methamphetamine. Id. at 154. According to Shealy, he carried an SKS rifle to feel safer. He also testified that Wise and Wymer had SKS rifles at the shed on Movant's property. Id. at 154. Shealy also testified that Wise and another co-defendant, Kenny Craps, got into an argument on Movant's property and Wise fired his weapon. Id. at 155. Shealy testified that the SKS rifles were out in the open on Movant's property. Id. at 157. Shealy testified that Movant obtained filters with methamphetamine in them from inside the shed. Id. at 165.

On the second day of trial, co-defendant Joe Wise testified for the government. Wise testified that he learned to cook methamphetamine from his cousin sometime around the beginning of 2002. Transcript of Jury Trial, Vol. II, ECF No. 689, 25. Wise testified that he sold a good deal of methamphetamine. Id. at 30. Wise testified that he met Movant through Movant's brother, and that he eventually began selling methamphetamine to Movant. Id. at 31. According to Wise, he sold

6

Movant three and one-half to seven grams of methamphetamine to Movant six or seven times a month. Id. at 34. Wise testified that Movant told him and Wymer that they could use the shed to make methamphetamine. Id. at 33. Movant would receive methamphetamine in exchange. Id. at 38. Movant would occasionally wash jars, towels, or rags that had residue of methamphetamine or ether on them. Id. at 41. Wise testified that he had an SKS rifle and 9 millimeter weapon in plain sight, and that he kept them for protection. Id. at 41-42. Wise also described the gun fight between him and Craps. Wise also testified that Movant would obtain supplies to assist in the cooks. Id. at 44. Wise testified that he did not pay rent to Movant for using the shed. Id. at 62. He also testified that Movant would be told when the manufacture was taking place. Id. at 70.

The government also introduced the testimony of co-defendant Jennifer Davis. Davis described a methamphetamine cook that took place in May 2003 at Movant's property. Id. at 82-85. Davis testified regarding the gunfight between Craps and Wise. Id. at 86-88. Davis also testified that Wise and Craps always had firearms with them, and that everybody knew they had the weapons. Id. at 91. According to Davis, Wise stated he and Movant had made up a fake lease for the shed to cover up their activities. Id. at 105.

Another co-defendant, Kenneth Craps, testified for the government. He stated that he carried a nine millimeter gun for protection, as did Wise. Id. at 119. They kept the weapons in the front waistband of their pants, where they generally were visible. Id. Craps met Movant through Wise. Wise told Craps that they had a place to go cook methamphetamine, that Movant had said they could use the shed. Id. at 121-22. According to Craps, the agreement between Movant and Wise was that Movant would be paid in methamphetamine for use of the shed. Id. at 126. Craps testified that Movant watched Craps and Wise manufacture methamphetamine. Id. at 127. Craps also testified

7

that Wise, Wymer, and Shealy all had SKS rifles at the shed, and that Movant was aware of the weapons. Id. at 133, 137. Craps described the gun fight between him and Wise. Id. at 134-36.

After the government rested its case, Movant's trial counsel called Andria Marie Watts, Movant's sister, to the stand. Watts testified that the shed had been rented pursuant to a rental agreement to Wise, and that she received $350.00 in rent in May 2003. Id. 163-64.

On October 24, 2007, the jury found Movant guilty as to Counts 1, 13, 14, and 15. ECF No. 522. With respect to Count 1, the jury found that 50 grams or more of methamphetamine, or 500 grams or more of a mixture or substance containing methamphetamine, was directly attributable to Movant. ECF No. 523.

Movant came before the court for sentencing on September 17, 2008. According to the presentence investigation report, Movant's total offense level was 32 with a criminal history category of I. His guideline range for Counts 1 and 13 was 121-151 months incarceration, 120 months maximum as to Count 14, and 60 months consecutive as to Count 15. No objections were made to the presentence investigation report. However, at the sentencing proceeding Movant informed the court that he felt he had not received a fair trial because counsel during the guilty plea proceeding had violated the attorney-client confidentiality rule. Id. at 6. Movant was informed that the proper forum for his claims was on direct appeal. Id. at 7. The court sentenced Movant to incarceration for a term of 181 months, consisting of 121 months as to Counts 1 and 13; 120 months as to Count 14, all to run concurrently; and 60 months as to Count 15, to run consecutively. Judgment was entered on September 18, 2008. ECF No. 726. The Court of Appeals for the Fourth Circuit affirmed Movant's conviction and sentence on November 19, 2009. See United States v. Watts, 352 F. App'x 784 (4th Cir. 2009). The sole issue raised by Movant regarded the validity of the search warrant used

to search his mobile home and shed.

Movant alleges the following grounds for relief:

GROUND ONE: The assistance of [Movant's] first appointed counsel was ineffective with respect to a failed plea agreement. . . . Counsel failed to properly prepared [Movant] for the judge's questioning during the plea hearing and then, in open court and without [Movant's] permission, revealed privileged attorney client communications regarding the firearm charge. . . . This situation was highly prejudicial to [Movant] and resulted in the trial judge imposing a longer sentence than was negotiated in the plea agreement.

GROUND TWO: The assistance of [Movant's] trial counsel was ineffective as a result of counsel's failure to object to, and to pursue exclusion of evidence related to the weight of methamphetamine attributed to [Movant]. . . . The vast majority of the material was located in a shed where [Movant's] alleged co-conspirators were observed. [Movant] was inside his residence, a separate structure, asleep in a recliner. A search of [Movant's] person only yielded approximately 1 gram of methamphetamine.

GROUND THREE: The assist[ance] of [Movant's] trial counsel was ineffective as a result of counsel's failure to object to, and to pursue exclusion of, supported expert testimony related to the use of firearms in the manufacture of methamphetamine. . . . Firearms belonging to others were merely present, and were not used in furtherance of drug activity. This testimony . . . was used to support [Movant's] conviction for use of a firearm under 18 U.S.C. § 924(c).

GROUND FOUR: The assistance of [Movant's] trial counsel was ineffective as a result of counsel's failure to object to, and pursue exclusion of the testimony of Defendant's alleged co-conspirators concerning [Movant's] purported knowledge of firearms belonging to the said alleged co-conspirators. . . . The alleged co-conspirators should not have been allowed to testify about [Movant's] state-of-mind. This testimony was used to convict [Movant] under 18 U.S.C. § 924(c).

GROUND FIVE: The assistance of [Movant's] trial counsel was ineffective as a result of the failure to object to the testimony of the alleged conspirators concern, in possession and use by the said alleged conspirators of which [Movant] was not aware, during which he was not present, and which was not committed with any drug activity. . . . The altercation in which the firearms were possessed and used had nothing to do with any drug activity, and [Movant] was not present. . . . This testimony was used to convict [Movant] under 18 U.S.C. § 924(c).

ECF No. 886, 3-7.

## II. DISCUSSION

The government has moved for summary judgment. Pursuant to Fed. R. Civ. P. 56(a), the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The facts and any inferences drawn from the facts should be viewed in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). The party seeking summary judgment bears the initial burden of demonstrating to the district court that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. Id.

### Law/Analysis

Movant contends he received ineffective assistance of counsel. To prove ineffective assistance of counsel, Movant must show that trial counsel's performance was deficient. See Strickland v. Washington, 466 U.S. 668, 687 (1984). An attorney's performance is deficient when it is not reasonable under prevailing professional norms. Id. at 688. Movant also must demonstrate that he was prejudiced by trial counsel's alleged deficient performance, in that because of trial counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 694. Strickland requires Movant to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court then must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. Even if counsel's performance is outside

the wide range of professional assistance, an error by counsel will not warrant setting aside the conviction if the error had no effect on the judgment. Id. at 694.

A.  Ground One – Disclosure of Privileged Information

At the change of plea hearing, and as noted above, Movant expressed some reservations regarding Count 15, asserting that he did not have possession of the SKS rifles carried by Wise, Wymer, and Shealy. Movant denied being in the shed while his co-defendants were in there with the guns. ECF No. 764. 25. During a colloquy with appointed counsel, Movant, and the AUSA, the court noted, "Well, if he was not in the shed when they were in the shed with the guns then I don't know how you can make – he didn't constructively possess them. He would have had to have been in there." Id. The AUSA argued that Movant was in constructive possession because the weapons were in the shed and Movant had control of the property. Id. at 26. The AUSA also asserted Pinkerton liability because the substantive acts of the co-defendants were reasonably foreseeable by Movant. Id. At this point, appointed counsel queried Movant:

> MR. ELLIOTT: Mr. Watts, you knew during the period of time at some point, you knew during the period of time they were operating this meth lab down there that they had Chinese rifles, is that right?
>
> DEFENDANT WATTS: Yeah.
>
> MR. ELLIOTT: And, in fact, at one point did you personally handle the Chinese rifle?
>
> DEFENDANT WATTS: Yeah.
>
> MR. ELLIOTT: Had it in your possession?
>
> DEFENDANT WATTS: I looked at it one time. I had it –
>
> MR. ELLIOTT: All right.

11

> THE COURT: I mean, if he doesn't feel like he's guilty of count 15 I'm not going to force him to plead guilty to count 15. If he feels that – I think, Mr. Elliott, you've explained to Mr. Watts what the law is and the law of constructive possession and the case of Pinkerton versus the United States and what that says. I mean, if he says he didn't have possession, constructive or otherwise, of the guns then I can't take a plea.
>
> MR. ELLIOTT: Except that he has just admitted that he did, Judge. Now, he and I –
>
> DEFENDANT WATTS: I want to plead. I mean –
>
> THE COURT: I'm –
>
> DEFENDANT WATTS: Unfortunately, I went to my lawyer and told the man everything that me and him talked about, and the lawyer, I don't think the lawyer is supposed to tell a prosecutor what me and him talked about behind closed doors. I mean, you know. But I plead guilty.
>
> MR. RAGSDALE: Your Honor, Mr. Elliott never revealed any confidences between himself and his client to me.
>
> THE COURT: All right. I think that at this point in time I don't feel comfortable taking Mr. Watts' plea because I think that he has some concerns about count 15. And based on the statements that he's just made I don't feel comfortable taking the plea at this time.

Id. at 27-28.

Movant contends that appointed counsel disclosed privileged information "in a misguided attempt to 'save' the plea agreement." ECF No. 912, 2. The gravamen of Movant's claim is that, had appointed counsel not disclosed privileged information, Movant would have been sentenced to a shorter term of imprisonment based on the first plea agreement, rather than having gone to trial. Movant also contends that the court should have recused itself after learning privileged information.

Defendant have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). In the context of pleas, a

defendant must show the outcome of the plea process would have been different with competent advice. Id. In circumstances where the ineffective advice led to the rejection of a plea offer, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . , that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Id.

It is not clear to the court what privileged information Movant contends was disclosed to the court at the plea colloquy. Movant voluntarily made statements on the record concerning his handling of the SKS rifles, but was unwilling to acknowledge any responsibility for the weapons with respect to the drug activities taking place in the shed behind his mobile home. Thus, regardless of appointed counsel's alleged deficient performance, there is no support in the record for a finding that Movant would have accepted responsibility for the SKS rifles belonging to his co-defendants.[2] Consequently, the court exercised its discretion to reject the plea. Movant's contention is without merit.

With respect to Movant's assertion that appointed counsel was ineffective for failing to request the court to recuse itself subsequent to the change of plea hearing, Movant's contention also is without merit. To merit recusal, the alleged bias or prejudice of the judge must result in an

---

[2] According to trial counsel, a week before trial the government offered a plea to the conspiracy charge (Count 1) with a mandatory minimum sentence of ten years, and dismissal of the gun charge (Count 15). Trial counsel avers that Movant refused the offer and appeared to be adamant in his position that he no longer wished to plead guilty. ECF No. 898-1, ¶ 5. Movant alternately denies that the government made such an offer (ECF No. 953, 2) and contends that the trial counsel obtained a severe prison term offer from the government that was rejected (ECF No. 958, 2). Regardless, Movant's contention is that appointed counsel was ineffective for allowing the court to reject the first plea agreement.

13

opinion on the merits of a case on some basis other than what the judge learned from his participation in the case. Belue v. Leventhal, 640 F.3d 567, 572-73 (4th Cir. 2011) (citing Liteky v. United States, 510 U.S. 540, 545 n.1 (1994)). Judicial rulings and opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings almost never constitute a valid basis for a bias or partiality motion. Id. at 573 (quoting Liteky, 510 U.S. at 555. Appointed counsel was not ineffective for failing to move for recusal.

B. Ground Two – Methamphetamine Attributed to Movant

Petitioner contends that he received ineffective assistance because trial counsel did not object to testimony concerning the weight of the drugs attributed to Movant by the jury. Movant contends that the amount attributed to Movant does not match any of the testimony and appears to have been set to match the statutory threshold without evidentiary support. ECF No. 912, 3.

Under United States v. Collins, 415 F.3d 304, 313-14 (4th Cir. 2005), the jury must determine that the threshold drug amount was reasonably foreseeable to the individual defendant in order for the statutory maximums and mandatory minimums of § 841(b) to apply in a drug conspiracy case. As noted hereinabove, the jury found Movant liable for 50 grams or more of methamphetamine, or 500 grams or more of a mixture or substance containing methamphetamine. Trial counsel vigorously cross-examined the witnesses in an attempt to discredit their testimony. The court finds that trial counsel ably represented Movant with respect to this issue. Movant's contention is without merit.

C. Ground Three – Expert Testimony Related to Use of Firearms

Movant contends that trial counsel was ineffective for failing to object to the government's expert in the manufacture and distribution of methamphetamine. Movant continues to assert that he did not own a weapon in connection with a drug activity, nor were firearms used by others in

connection with any drug activity. Movant contends that trial counsel was ineffective for failing to object to expert testimony offered to demonstrate that Movant had knowledge of the weapons carried by Wise, Wymer, Shealy, and Craps in furtherance of their methamphetamine operation.

Fed. R. Evid. 702 allows for an expert to testify as to his specialized knowledge in a given area if the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony about common practices of drug dealers is routinely admitted in drug cases in order to help the trier of fact understand the mechanics of drug trafficking. United States v. Pomranky, 165 F. App'x 259, 260 (4th Cir. 2006) (citing cases). The Fourth Circuit has upheld testimony tending to show that firearms are well-recognized "tools of the trade" in the illegal drug business. See United States v. Ward, 171 F.3d 188, 195 (4th Cir.1999). Trial counsel had no basis on which to object to the expert witness. It is axiomatic that failure to raise a meritless claim cannot serve as a ground for ineffective assistance of counsel. See Bolender v. Singletary, 16 F. 3d 1547, 1573 (11th Cir. 1994).

D.  Ground Four – Lay Testimony Regarding Firearms

Movant contends that trial counsel was ineffective for allowing testimony regarding Movant's state of mind. Movant contends that his co-conspirators should not have been allowed to give an opinion as to whether he knew there were weapons involved in the methamphetamine operation in the shed behind Movant's mobile home, and whether he knew the weapons were used in connection with the operation.

Federal Rule of Evidence 701 authorizes the admission of lay opinion testimony if it is: "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical,

or other specialized knowledge within the scope of Rule 702." The rule allows testimony based on the person's reasoning and opinions about witnessed events, such as are familiar in every day life. United States v. Offill, 666 F.3d 168, 177 (4th Cir. 2011). Unlike the Rule 702 regarding expert testimony, Rule 701 permits lay testimony relating to a defendant's hypothetical mental state. Id.

In this case, Wymer, Wise, Shealy, Craps, and Davis all testified regarding their perception that Movant was aware of the SKS rifles and handguns, that the weapons were generally utilized by these individuals for protection, and that they weapons were generally present in the shed or on the persons of these witnesses. Trial counsel had no basis by which to move to exclude this testimony. Movant's assertion is without merit.

E.      Ground Five – Gun Fight

Movant asserts that trial counsel was ineffective for failing to object to the testimony of a number of witnesses regarding the gun fight between Wise and Craps. Movant argues that he was not present during the incident and that the altercation had nothing to do with drug activity.

Fed. R. of Evid. 401 provides for the admission of relevant evidence, that is, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In this case, the testimony regarding the gun fight was relevant to show that Movant's co-conspirators possessed firearms on Movant's property. Wise, Wymer, Shealy, and Craps were present on the property for the sole purpose of manufacturing methamphetamine. The incident makes more probable the existence of the fact that the firearms were used in connection with and in furtherance of the methamphetamine manufacture. Trial counsel's performance was not deficient for failing to object to the testimony regarding the gunfight. Movant's contention is without merit.

16

## III. CONCLUSION

For the reasons stated, Respondent's motion for summary judgment is **granted**. Movant's § 2255 motion is **denied and dismissed** with prejudice.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir.2001). The court concludes that Movant has not made the requisite showing. Accordingly, the court **denies** a certificate of appealability.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Chief United States District Judge

Columbia, South Carolina

August 21, 2012

**NOTICE OF RIGHT TO APPEAL**

**Movant is hereby notified that he has the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**